J-S11012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANTHONY JONES | : | |
| | : | |
| Appellant | : | No. 1267 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 8, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004207-2021

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                          **FILED MAY 10, 2024**

Anthony Jones appeals from the aggregate judgment of sentence of twenty-nine and one-half to fifty-nine years of incarceration, imposed after he was found guilty of homicide by vehicle and related offenses. We reverse his convictions premised upon driving under the influence ("DUI") and otherwise vacate in part and affirm in part his judgment of sentence.

The trial court summarized the factual and procedural history of this case as follows:

> On July 16, 2020, at approximately 1:00 AM, Officer Colin Richers initiated a traffic stop of a vehicle operated by Appellant . . . near MacDade Boulevard and Chester Pike in Collingdale, P[ennsylvania]. Appellant initially pulled over onto the side of the road, but then continued driving into the McDonald's parking lot nearby. Officer Richers followed Appellant into the parking lot and requested Appellant turn his vehicle off. Instead of doing so, Appellant fled out of the parking lot. As he did so, he hit another

_____

[*] Retired Senior Judge assigned to the Superior Court.

police vehicle and then began traveling down MacDade Boulevard at over [eighty] miles per hour. He ran through six red lights and veered into the opposing traffic lane multiple times. After running through the last red light, having travelled approximately a mile and a half, Appellant's vehicle struck another vehicle carrying Matt Munafo and Angel McIntyre. The crash caused Mr. Munafo to be ejected from the vehicle and killed Ms. McIntyre on impact. Appellant then climbed out of the driver's side window and fled on foot, leaving his girlfriend, his girlfriend's cousin, and his three children, ages [six], [five], and [three], in the vehicle.

Appellant was caught and arrested by officers after a brief foot pursuit. Officers recovered a [.]38 revolver in a trashcan near where Appellant was arrested. A Glock was found on Appellant's girlfriend. Inside the vehicle, officers recovered a Smith and Wesson; a Charter Arms [.]32 magnum, and ammunition in a bag under the driver's seat. Appellant submitted to chemical testing which determined he had methamphetamine and marijuana in his system.

Trial Court Opinion, 8/28/23, at 1-2.

Appellant was charged with numerous offenses as a result. Prior to trial, defense counsel filed a motion to suppress and a motion for nominal bail pursuant to Pa.R.Crim.P. 600(B). Appellant subsequently filed *pro se* a motion to dismiss pursuant to Rule 600(A), which counsel adopted. The trial court held hearings and ultimately denied all the motions. A jury trial commenced on February 28, 2023, at the conclusion of which Appellant was found guilty of third-degree murder, homicide by vehicle, homicide by vehicle while DUI, aggravated assault, aggravated assault by vehicle, aggravated assault by vehicle while DUI, fleeing and eluding, three counts of endangering the welfare of a child ("EWOC"), and two counts of person not to possess a firearm.[1]

---

[1] Appellant was acquitted of a third person-not-to-possess charge.

On April 27, 2023, the trial court imposed an aggregate term of incarceration of twenty-nine and one-half to fifty-nine years, which was composed of the following individual sentences:

- **Third-degree murder**: seventeen to thirty-four years of incarceration;

  o **Homicide by vehicle**: three and one-half to seven years of incarceration to be served concurrent to the period of incarceration imposed for third-degree murder;[2]

  o **Homicide by vehicle while DUI**: five to ten years of incarceration to be served concurrent to the period of incarceration imposed for third-degree murder;

- **Aggravated assault**: five to ten years of incarceration to be served consecutive to the period of incarceration imposed for third-degree murder;

  o **Aggravated assault by vehicle**: four and one-half to nine years of incarceration to be served concurrent to the period of incarceration imposed for aggravated assault;

  o **Aggravated assault by vehicle while DUI**: four and one-half to nine years of incarceration to be served concurrent to the period of incarceration imposed for aggravated assault;

- **Fleeing and eluding**: one and one-half to three years of incarceration to be served consecutive to the prior periods of incarceration;

- **EWOC** (three counts): one and one-half to three years of incarceration each, to be served concurrent to each other but consecutive to the other periods of incarceration;

_____

[2] The period of incarceration imposed at this count was *sua sponte* clarified by an amended sentencing order entered on May 8, 2023.

- **Persons not to possess a firearm** (two counts): four and one-half to nine years of incarceration each, served concurrent to each other but consecutive to the other terms of incarceration.

Appellant filed a post-sentence motion, which the trial court denied on May 4, 2023.[3] This timely notice of appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement, raising eighteen issues. The trial court issued a Rule 1925(a) opinion in response. In this Court, Appellant has refined his challenges to the following four questions:

I)   Whether the court below erred in refusing to dismiss [Appellant's] case, since more than 365 days elapsed from the filing of the complaint, the prosecution did not present sufficient competent evidence of excludable time or excusable delay, and it failed to exercise due diligence, in violation of Pa.R.Crim.P. 600 and his state and federal constitutional rights?

II)  Whether the evidence is insufficient to sustain the convictions for homicide by vehicle while [DUI] and aggravated assault by vehicle while [DUI], since [Appellant] was not also found guilty of [DUI], which is an essential element of both counts?

III) Whether the court below erred in denying [Appellant's] motion to strike for cause Panelist #4, where the prospective juror knew employees of the Delaware County District Attorney's Office and expressed concerns that the nature of the charges and his severe squeamishness would preclude him from fairly evaluating the graphic allegations?

_____

[3] At the same time the trial court denied the counseled motion, Appellant *pro se* filed two motions regarding his speedy trial rights and evidence admitted at trial. Since Appellant was represented by counsel at that time, the court did not rule on the *pro se* motions. **See Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa.Super. 2016) (explaining that because "hybrid representation is not permitted . . . , *pro se* motions have no legal effect and, therefore, are legal nullities" (cleaned up)).

- 4 -

IV) Whether the judgment of sentence is illegal, since the nine[-]year penalty for aggravated assault by vehicle exceeds the felony-three statutory maximum, and where that offense should have merged with aggravated assault and homicide by vehicle with third-degree murder?

Appellant's brief at 8 (reordered for ease of disposition).

We begin with Appellant's speedy trial challenge, mindful of the following, well-settled legal principles:

> Our standard of review of a Rule 600 determination is whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will[,] discretion is abused. Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party.

*Commonwealth v. Morgan*, 239 A.3d 1132, 1137 (Pa.Super. 2020) (cleaned up). In conducting this review, we are "not permitted to ignore the dual purpose behind Rule 600[,]" namely, "(1) the protection of the accused's speedy trial rights, and (2) the protection of society." *Commonwealth v. Martz*, 232 A.3d 801, 809-10 (Pa.Super. 2020) (cleaned up).

Rule 600 provides in pertinent part as follows:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

. . . .

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

. . . .

(3)(a) When a judge or issuing authority grants or denies a continuance:

（i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

. . . .

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

Here, the criminal complaint was filed on July 16, 2020, but Appellant's jury trial did not commence until February 28, 2023. Clearly, this was well past the mechanical run date. However, that does not automatically mean that Appellant's speedy trial rights were violated, since Rule 600(C) provides for adjustment of a defendant's run date. Stated simply, "when the Commonwealth causes delay, the Rule 600 clock continues to tick; when the defendant causes the delay, the clock stops." ***Morgan***, 239 A.3d at 1137 (cleaned up). Judicial delay, however, requires a bit more analysis, which our Supreme Court has outlined thusly:

> [I]n ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion. Otherwise, the due diligence component of Rule 600 would have little, if any, meaningful import.

***Commonwealth v. Harth***, 252 A.3d 600, 618 (Pa. 2021) (cleaned up). In that regard, we have explained:

> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

*Martz*, 232 A.3d at 810–11 (cleaned up). Finally, to obtain relief, a defendant must "have a valid Rule 600 claim at the time" of filing the motion to dismiss. *Commonwealth v. Hunt*, 858 A.2d 1234, 1243 (Pa.Super. 2004) (*en banc*).

Appellant *pro se* filed a boilerplate Rule 600 motion requesting that the charges against him be dismissed because more than 365 days had elapsed since his arrest. *See* Defendant's Motion for Dismissal Pursuant to Pa.R.Crim.P. 600, 7/7/22. In adopting this motion, counsel articulated Appellant's argument thusly: "none of the time, especially at the [magisterial district judge ("MDJ")] level[,] counts against him despite the docket markings that they are defense continuances" because Appellant did not ask his counsel to make those requests.[4] *See* N.T. Motions Hearing, 8/4/22, at 4.

In response, the Commonwealth relied on the argument and evidence it had presented at the Rule 600(B) hearing concerning Appellant's release on nominal bail, which focused on the continuances before the MDJ. *Id*. at 5. Appellant had conceded for purposes of the Rule 600(B) motion that any entries on the MDJ docket labeled as defense continuances were excludable time. Instead, he focused on the 220-day period from December 15, 2020, to July 23, 2021, which was noted on the docket as a continuance by the MDJ. The Commonwealth argued that this period should not be included as the matter was only continued because Appellant refused to appear by video conference during the COVID-19 pandemic. *See* N.T. Motions Hearing,

---

[4] While Appellant has been consistently represented by the Public Defender's Office, the attorney representing Appellant in front of the MDJ passed away.

4/18/22, at 10-11. In support, the Commonwealth offered a July 24, 2020 email from prior defense counsel which indicated that "his client wants to be present."[5] *Id*. at 14. After the courts began conducting in-person hearings again in July 2021, the Commonwealth recalled that Appellant was scheduled for an in-person preliminary hearing on July 23, 2021. However, as reflected in the docket, Appellant requested a continuance because he was not ready, and made the same request again on August 20, 2021. *See* Motion for Nominal Bail Pursuant to Pa.R.Crim.P. 600(B), 3/18/22 (MDJ Criminal Docket at 2). On September 24, 2021, Appellant waived his preliminary hearing and a formal arraignment was scheduled.

At the Rule 600(B) hearing, the trial court construed the 220-day period of delay as a defense continuance which, together with the other defense continuances prior to the waiver of the preliminary hearing, amounted to a total of 283 days of delay that were caused by Appellant and, therefore, were not included in the Rule 600 calculation. Finding no violation of Rule 600(B), the court denied the motion. The court again considered this background in ruling upon Appellant's Rule 600(A) motion four months later. Ultimately, Appellant failed to convince the court to reconsider how it had calculated the defense continuances as to the MDJ proceedings. Having rejected the sole basis for Appellant's dismissal request, the court denied his Rule 600 motion.

---

[5] This exhibit does not appear in the certified record transmitted to this Court.

On appeal, Appellant abandons his defense continuance argument. It is well settled that if an appellant's "brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate an appellant's arguments for him." ***Commonwealth v. Armolt***, 294 A.3d 364, 377 (Pa. 2023) (cleaned up). Since Appellant has failed to develop this claim in any meaningful manner, it is waived.[6]

Instead, Appellant argues that (1) the Commonwealth failed to adduce sufficient evidence at the Rule 600(A) hearing, (2) the Pennsylvania Supreme Court's Statewide Judicial Emergency Order did not apply, and (3) Appellant's constitutional rights to a speedy trial were violated. ***See*** Appellant's brief at 24-27. While Appellant referenced the United States and Pennsylvania

---

[6] We note that even if Appellant had properly developed his argument, this issue would not merit relief as it is in direct contravention of our jurisprudence. ***See Commonwealth v. Watson***, 140 A.3d 696, 699 (Pa.Super. 2016) (stating that since there is no authority "to support [Watson's] contention that counsel must obtain a defendant's permission prior to requesting a continuance" and "continuances are a matter of sound trial strategy within the reasonable purview of counsel[,]" this Court will not hold the Commonwealth responsible for "defense continuances over which the Commonwealth exercised no influence or control" (footnote omitted)); ***Commonwealth v. Talley***, 268 A.3d 457, 2021 WL 5578752, at *10 (Pa.Super. 2021) (non-precedential decision) (holding in the PCRA context that "trial counsel did not require the defendant's consent in order to seek continuances in this case" and that "[s]ince the defense postponements constituted excludable time under Rule 600, there was no speedy trial violation" (cleaned up)). Thus, were we to reach the merits, we would conclude that the trial court did not abuse its discretion in finding no Rule 600 violation on the basis that Appellant's counsel sought continuances before the MDJ.

constitutions in his boilerplate *pro se* motion, counsel clarified at the hearing in which the *pro se* motion was adopted that Appellant's sole argument was that the defense continuances should be included in the Rule 600 calculation because Appellant did not request them.[7]  Accordingly, the excludability of the defense continuances was the sole legal challenge preserved by counsel's adoption of Appellant's *pro se* Rule 600 motion and all others are waived.  **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Leaner**, 202 A.3d 749, 765 n.3 (Pa.Super. 2019) (deeming Leaner's constitutional speedy trial challenges waived because "[a]lthough [he] suggested in his pre-trial motion that there was a violation of his constitutional rights, he abandoned the claim during the hearing/argument before the trial court" (citations omitted)).

Appellant next challenges the sufficiency of the evidence to sustain his convictions for homicide by vehicle while DUI and aggravated assault by vehicle while DUI, where the Commonwealth did not charge Appellant separately with DUI.  **See** Appellant's brief at 34.  The trial court and the Commonwealth concede that the lack of a DUI conviction renders the evidence for these two convictions insufficient.  **See** Trial Court Opinion, 8/28/23, at 14

---

[7] The entirety of Appellant's argument in his motion was as follows:  "More than 365 days have elapsed since [Appellant]'s arrest and incarceration and he/she is entitled to have the claims against him/her dismissed under Pa.R.Crim.P. 600(A)(3); **see also** U.S. CONST., AMEND. VI; PA. CONST., ART. I § 9."  Defendant's Motion for Dismissal Pursuant to Pa.R.Crim.P. 600, 7/7/22.

(agreeing that the evidence was insufficient to support these charges because the Commonwealth chose not to pursue an independent DUI charge); Commonwealth's brief at 21.

"In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." *Commonwealth v. Arias*, 286 A.3d 341, 349 (Pa.Super. 2022) (cleaned up). We begin with the elements of the challenged offenses. Homicide by vehicle while DUI is committed by any individual "who unintentionally causes the death of another person as the result of a violation of [§] 3802 (relating to [DUI] of alcohol or controlled substance) **and who is convicted of violating** [**§**] **3802**[.]" 75 Pa.C.S. § 3735(a)(1) (emphasis added). Likewise, aggravated assault by vehicle while DUI occurs when "[a]ny person who negligently causes serious bodily injury to another person as the result of a violation of [§] 3802 (relating to [DUI] of alcohol or controlled substance) **and who is convicted of violating** [**§**] **3802** commits a felony of the second degree when the violation is the cause of the injury[.]" 75 Pa.C.S. § 3735.1(a) (emphasis added).

Appellant was not convicted of violating § 3802, an essential element of each DUI-related offense. Accordingly, we vacate his sentences for homicide by vehicle while DUI and aggravated assault by vehicle while DUI, and reverse those convictions. However, we need not remand for resentencing on the

- 12 -

remaining convictions because the trial court imposed concurrent sentences for the DUI-related crimes, and therefore this disposition does not affect the aggregate sentence imposed. **See Commonwealth v. James**, 297 A.3d 755, 770 (Pa.Super. 2023) (deeming remand unnecessary where vacated sentence was imposed concurrently and therefore does not disturb the overall sentencing scheme).

In his third issue on appeal, Appellant asserts that the trial court erred in denying his motion to strike juror number four for cause. We have "explained that appellate review of a trial court's refusal to strike a prospective juror for cause depends upon the underlying basis for which the disqualification is sought." **Commonwealth v. Dula**, 262 A.3d 609, 624 (Pa.Super. 2021) (cleaned up).

> The test for determining whether a prospective juror should be disqualified is whether he is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

**Commonwealth v. Briggs**, 12 A.3d 291, 333 (Pa. 2011) (cleaned up). We conduct this review pursuant to an abuse of discretion standard, and we will not disturb a trial court's decision in that regard absent a palpable abuse of that discretion. **Id**. at 332-33.

- 13 -

According to Appellant, juror number four was unfit to serve on the jury because he admitted to being easily nauseated by graphic images, thereby rendering it "impossible for him to process the allegations against [Appellant.]" Appellant's brief at 31. Moreover, Appellant contends that the juror never indicated that he could follow the court's instructions or that his aversion to the photographic evidence could be ignored. *Id*. at 32.

During *voir dire*, the juror indicated that one reason he might not be able to serve as a fair and impartial juror was because he was "very squeamish, so [he] thought that there might be evidence presented with blood and other things that [he] would possibly faint." N.T. Jury Trial, 2/28/23, at 94. The following exchange then occurred, where the trial court attempted to ascertain the extent of the juror's qualmishness:

THE COURT:  . . . would you faint at a black and white photo?

JUROR NO. 4:  I don't know.

THE COURT:  I don't either.

JUROR NO. 4:  I mean, I wasn't at the birth of my children. I stayed in another room.

THE COURT:  All right, well I wish I hadn't been either, but it's kind of a requirement for me, when they asked if I wanted a mirror I said no thank you.

JUROR NO. 4:  Right.

THE COURT:  So I understand that.

JUROR NO. 4:  Okay.

THE COURT: And you would not have been the first husband to faint during it, believe me.

JUROR NO. 4: Yep.

THE COURT: That's just crazy, but I know. I know. So I understand that [--]

JUROR NO. 4: Okay.

THE COURT: [--] but I'm thinking the black and white photos are really – and that is not going to be a – so counsel, if you want to ask questions, I'm not – from what I know, the black and white photos are not such that I don't think that they would…

JUROR NO. 4: Okay.

*Id*. at 94-96. Thereafter, the juror indicated that he knew people in the District Attorney's Office but that those relationships would not affect his ability to be fair and impartial. *Id*. at 97. Concerned that the juror might not be able to sit through the charges or separate his emotions, Appellant argued that he should be stricken for cause. The court rejected the request. *Id*. at 102.

In its Rule 1925(a) opinion, the court explained that the juror's squeamishness did not impact upon "his ability to be fair or impartial[,] the only reasons one could be stricken for cause in this Commonwealth." Trial Court Opinion, 8/28/23, at 7. Rather, the court maintained that "a peremptory strike was the appropriate route for striking juror [number] four, not a strike for cause." *Id*.

The trial court's *voir dire* questions illustrated the commonsense notion that there exists a stark difference between viewing black-and-white still photographs of a stranger in a sterile, courtroom environment, and waiting for one's partner to give birth to their child in a delivery room, where one is assailed with various sights, sounds, smells, and emotions. Juror number four's perceived inability to withstand the latter simply had no bearing on his ability to perform the former. The court understood this difference and did not abuse its discretion in concluding that the sensitive constitution asserted by the juror would not impact his ability to be fair and impartial in hearing this case. **See Briggs**, 12 A.3d at 333 (explaining that the court's determination about a juror's ability to overcome any basis for disqualification "is to be determined on the basis of answers to questions and demeanor" (cleaned up)).

Insofar as Appellant now challenges the court's denial of the for-cause strike request based upon the juror's contacts with the district attorney's office, Appellant did not seek to strike him on that basis, so that argument is not properly before us. **See** N.T. Jury Trial, 2/28/23, at 102; Pa.R.A.P. 302(a). Regardless, the juror indicated that those relationships would not affect his ability to be an impartial juror. **Id**. at 97 (answering "I don't think so" in response to being asked if his relationship with individuals in the District Attorney's Office would affect his ability to be fair). Therefore, Appellant has

presented no argument compelling us to disturb the trial court's decision to deny his motion to strike for cause juror number four.

Finally, Appellant argues that the trial court committed three sentencing errors. Specifically, he contends that his sentence for aggravated assault by vehicle both exceeded the statutory maximum and should have merged with aggravated assault, and that his sentence for homicide by vehicle legally merged with third-degree murder. **See** Appellant's brief at 38. The trial court and the Commonwealth agree with Appellant that these violations entitle him to relief. **See** Trial Court Opinion, 8/28/23, at 20-21; Commonwealth's brief at 22.

These issues require us to consider the legality of Appellant's sentence. As such, "our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Merced**, 308 A.3d 1277, 1282 (Pa.Super. 2024) (cleaned up). Beginning with Appellant's merger challenges, we observe that "[t]he only way two crimes merge for sentencing is if all elements of the lesser offense are included within the greater offense[;] if both crimes require proof of at least one element that the other does not, then the sentences do not merge." **Id**. (cleaned up); 42 Pa.C.S. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for

sentencing purposes, the court may sentence the defendant only on the higher graded offense.").

We first consider merger of the aggravated assault sentences. As charged in this case, a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). The lower-graded offense, aggravated assault by vehicle, is defined thusly:

> Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except [§] 3802 (relating to [DUI] of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S. § 3732.1(a).

Our review confirms that neither crime wholly includes the other as they require different elements of proof. "Aggravated assault, pursuant to the relevant subsection, requires a person to cause serious bodily injury or an attempt to cause such bodily injury under circumstances manifesting extreme indifference to the value of human life." *Commonwealth v. Edwards*, 256 A.3d 1130, 1138 (Pa. 2021) (citation omitted). Aggravated assault by vehicle, meanwhile, requires a person to cause bodily injury by recklessness or gross negligence while committing a traffic or vehicle code violation. *See* 75 Pa.C.S. § 3732.1(a). "Since all of the statutory elements of [aggravated assault by

- 18 -

vehicle] are not contained in [aggravated assault], they do not merge for sentencing purposes pursuant to [§] 9765." **Edwards**, 256 A.3d at 1138. Therefore, the trial court did not err in sentencing Appellant separately for these distinct crimes.

Turning to the homicide-related sentences, the higher-graded offense, third-degree murder, has two elements: 1) the defendant "killed another person [2)] with malice." **Commonwealth v. Geiger**, 944 A.2d 85, 90 (Pa.Super. 2008) (citation omitted). Homicide by vehicle has four elements: "1) recklessness or gross negligence; 2) causing death; and 3) while violating the vehicular code; and 4) the violation is the cause of death." **Commonwealth v. Jarosz**, 152 A.3d 344, 351 (Pa.Super. 2016).

In agreeing that the offenses merge, the parties rely on this Court's decision in **Commonwealth v. Davis**, 760 A.2d 406 (Pa.Super. 2000), where we held that merger of these charges was appropriate because at the time of Davis's offense in 1984, homicide by vehicle merged with involuntary manslaughter, and involuntary manslaughter was a lesser included offense of third-degree murder. **Id**. at 414. However, that decision predated our legislature's enactment of § 9765, which now exclusively governs merger. In interpreting § 9765, the High Court clarified that "our [merger] analysis begins and ends with the statutory elements of each offense." **Edwards**, 256 A.3d at 1137 (footnote omitted). In that regard, § 9765 has two prongs:

> [T]he "single criminal act" language is a distinct prong that must be satisfied in order to determine if merger is appropriate. Thus,

- 19 -

even if the "single criminal act" prong may require an examination of the underlying facts of the charged offenses, such requirement does not control the second distinct prong of examining if **all** the elements of one offense are included in the other.

*Id*. at 1137 n.11 (citations omitted, emphasis in original).

Applying this framework to the instant matter, we readily conclude that third-degree murder and homicide by vehicle constitute a single criminal act in this case. Turning to the second prong, while both require a death caused by the defendant, only homicide by vehicle requires proof of a violation of the Vehicle Code. Therefore, "[s]ince all of the statutory elements of [homicide by vehicle] are not contained in [third-degree murder], they do not merge for sentencing purposes pursuant to [§] 9765." *Id*. at 1138. Thus, Appellant is not entitled to relief on this merger claim.

Lastly, we consider whether Appellant's sentence for aggravated assault by vehicle exceeded the statutory maximum. Since aggravated assault by vehicle is a third-degree felony, the statutory maximum sentence Appellant could receive was seven years. *See* 75 Pa.C.S. § 3732.1(a); 18 Pa.C.S. § 1103(3) ("In the case of a felony of the third degree, for a term which shall be fixed by the court at not more than seven years."). Therefore, his sentence of four and one-half to nine years of incarceration is illegal. We vacate Appellant's judgment of sentence in that regards but decline to remand for resentencing because the vacated sentence was imposed concurrently with aggravated assault. *See James*, 297 A.3d at 770.

To recap, we vacate Appellant's sentences for aggravated assault by vehicle, aggravated assault by vehicle while DUI, and homicide by vehicle while DUI, and reverse his convictions for aggravated assault by vehicle while DUI and homicide by vehicle while DUI. Since this disposition has not disturbed the overall sentencing scheme, we do not remand for resentencing, and otherwise affirm his judgment of sentence.

Sentences for aggravated assault by vehicle, aggravated assault by vehicle while DUI, and homicide by vehicle while DUI vacated. Convictions for aggravated assault by vehicle while DUI and homicide by vehicle while DUI reversed. Judgment of sentence affirmed in all other respects.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/10/2024